695 A.2d 752

EUGENE ROMAN, NICHOLAS ULLIANA, ROBERT KAISER, BRI-AN VEPREK, JR. AND BRIAN VEPREK, SR., PLAINTIFFS–AP-PELLANTS/CROSS–RESPONDENTS, v. TOWNSHIP OF SOUTH HACKENSACK, MAYOR AND MEMBERS OF THE SOUTH HACKENSACK TOWNSHIP COMMITTEE, DEFENDANTS–RE-SPONDENTS/CROSS–RESPONDENTS, AND JOSEPH E. BROWN, JR. AND MICHAEL MONTENEGRO, DEFENDANTS–RESPONDENTS/CROSS–APPELLANTS, AND MICHAEL ZITO, GEORGE LEICHTWEISZ, AND JOSEPH TERRACCINO, DE-FENDANTS.

Superior Court of New Jersey
Appellate Division

Argued June 11, 1997—Decided June 30, 1997.

Before Judges BAIME, PAUL G. LEVY and BRAITHWAITE.

*Dennis Calo* argued the cause for appellants/cross-respondents (*Calo Agostino*, attorneys; *Mr. Calo*, on the brief).

*Matthew S. Rogers* argued the cause for respondents/cross-appellants (*Contant, Scherby & Atkins*, attorneys; *Andrew T. Fede*, on the brief).

*Dennis J. Oury* argued the cause for respondents/cross-respondents (*Oury & Mizdol, P.C.*, attorneys; *Mr. Oury*, on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

Plaintiffs appeal from a judgment declaring that defendants Township of South Hackensack (South Hackensack) and the mayor and members of the South Hackensack Township Committee acted in accordance with the Open Public Meetings Act (OPMA), *N.J.S.A.* 10:4-6 to -21, when certain promotions in the South Hackensack Police Department (Department) were made. Defendants Joseph E. Brown, Jr. and Michael Montenegro cross-appeal from that portion of the judgment denying their claims for counsel fees and costs. We conclude that South Hackensack violated the OPMA and therefore reverse on the appeal. We affirm on the cross-appeal.

I

Plaintiff Eugene Roman was deputy chief of the Department between 1992 and 1994 and served as acting chief for a significant portion of 1994. The former chief of police and several police officers were indicted in 1994, and therefore, South Hackensack had to appoint a new chief of police. The other plaintiffs are all members of the department, except for Brian Veprek, Sr., who was a citizen and taxpayer of South Hackensack.

The members of the Township Committee at all relevant times were Angelo Cerbo, mayor; Nicholas Brando, deputy mayor; James Anzevino; Walter Eckel; and Lucien Zeppone. Eckel and Anzevino, the two Democrats on the Township Committee, stated

in certifications that in July or August 1994, Cerbo announced that the following people would be considered for the chief of police position: Joseph E. Brown, Michael Zito, and Eugene Roman. The Township Committee then interviewed each candidate, and after the interviews, Cerbo notified the Committee that they would discuss the candidates at the Committee's next meeting.

Marie Nasta, the Township clerk at the time, stated in her certification that it was her responsibility to notify the press and public of South Hackensack's public meetings. In January 1994, the Township Committee passed Resolution 69, which listed the dates, times, and locations of its meetings in 1994. The Township Committee held two types of meetings, denominated as "caucus" and "public" meetings. The caucus meetings were held to discuss the business that would then be considered at the regular meeting. No agendas for these meetings were ever posted or published. In her certification, Nasta stated that November 29, 1994, was not one of the dates listed on Resolution 69 for either a public meeting or a caucus meeting. In November, she posted a notice rescheduling a caucus meeting from November 29, 1994, to December 6, 1994, and notified one newspaper, the *Bergen Record*. The notice also rescheduled a public meeting from December 1, 1994, to December 7, 1994. The notice read as follows:

> PLEASE TAKE NOTICE that the Township Committee has rescheduled the December caucus and bi-monthly meetings as follows:
>
> 1. Caucus meeting originally scheduled for Tuesday, November 29, 1994 at 7:30 p.m. has been rescheduled to Tuesday, December 6, 1994 at the Municipal Complex, 227 Phillips Ave., So. Hackensack, N.J. at 7:30 p.m.
>
> 2. Bi-monthly meeting originally scheduled for Thursday, December 1, 1994, at 8:00 o'clock p.m. has been rescheduled to Wednesday, December 7, 1994, at the Municipal Complex, 227 Phillips Avenue, South Hackensack, at 8:00 o'clock p.m.

On December 6, 1994, at the caucus meeting, the three Republican members of the Township Committee, Cerbo, Brando, and Zeppone, recommended and voted in favor of the following promotions:

| Name | New position | Former position |
| --- | --- | --- |
| Joseph E. Brown | Chief of police | Lieutenant |
| Michael Zito | Captain | Lieutenant |
| George Leichtweisz | Lieutenant | Sergeant |
| Michael Montenegro | Lieutenant | Patrolman |
| Joseph Terraccino | Sergeant | Patrolman |

The two Democratic members of the Township Committee did not know that the promotions were going to be discussed at the meeting, and they voted against the promotions.

Eckel and Anzevino stated in their certifications that from the time after the interviews until the December 6, 1994, meeting, the Township Committee did not discuss which candidates would be appointed or that the promotions would be voted on at the December 6 meeting. They believed that the Committee would vote only on motel licensing at the December 6 meeting.

The Republican members of the Township Committee stated at their respective depositions that they knew that the promotions were going to be voted on at the meeting. Zeppone and Brando stated that Cerbo told them individually about a week prior to the December 6 meeting that they were going to vote on the promotions. During this discussion, Zeppone and Cerbo discussed who would be promoted. According to Zeppone, Cerbo told him that he wanted to install a new police chief and that they had waited long enough.

None of the Republicans discussed the plan to approve the promotions at the December 6 meeting with the Democrats. Cerbo admitted that he did not inform Nasta that the promotions would be voted on at the meeting, and therefore, she was unable to place this item on any agenda. Cerbo also stated that there was no particular reason that the other Committee members were not notified. He stated, "[o]n the advice of my attorney, I decided to bring up whatever I wanted to bring up at the caucus meeting." Cerbo discussed with his Republican counterparts whether to notify the Democrats of the Republican plan to vote on the promotions but decided not to tell the Democrats.

Zeppone told Brown prior to the December 6 meeting that Brown would be promoted. He did not tell any of the other

candidates that they were going to be promoted. Brando told Zito prior to the meeting that he would be promoted because the two were good friends.

## II

In January 1995, plaintiffs filed suit challenging the promotions. The first two counts alleged violations of the OPMA. Counts three through six alleged that South Hackensack acted arbitrarily and capriciously in promoting Brown, Montenegro, and Terraccino. All defendants answered, generally denying the allegations; however, South Hackensack admitted that it failed to give adequate notice of the December 6, 1994, meeting and that it failed to publish an agenda for the meeting. South Hackensack also counterclaimed and cross-claimed for a declaratory judgment that the meeting was held in compliance with the OPMA and therefore the promotions were valid. The defendants Brown, Montenegro, Zito, Leichtweisz, and Terraccino counterclaimed against plaintiffs and cross-claimed against South Hackensack seeking counsel fees and costs.

In March 1996, plaintiffs moved for partial summary judgment on count one, and defendants Brown and Montenegro cross-moved for summary judgment on counts three and four. All the motions were denied. In June 1996, plaintiffs agreed to dismiss counts three through six.

Thereafter, on June 27, 1996, the matter was tried on the written submissions. The judge found that the December 6, 1994, meeting complied with the OPMA, and therefore, the promotions were valid. He dismissed all counterclaims and cross-claims for legal fees and costs. Plaintiffs now appeal only from the promotions granted to Brown and Montenegro. Brown and Montenegro cross-appeal from the denial of their claims for counsel fees and costs.

## III

The purpose of the OPMA is "to insure the right of [the State's] citizens to have adequate advance notice of and the right to attend

all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way." *N.J.S.A.* 10:4–7. To achieve this policy, public governing bodies must abide by *N.J.S.A.* 10:4–9a, which states as follows:

> Except as provided by subsection b. of this section, or for any meeting limited only to consideration of items listed in section 7.b. no public body shall hold a meeting unless adequate notice thereof has been provided to the public.
>
> [*Ibid.* (footnote omitted).]

*N.J.S.A.* 10:4–8d defines adequate notice as follows:

> "Adequate notice" means written advance notice of at least 48 hours, giving the time, date, location and, *to the extent known, the agenda of any regular, special or rescheduled meeting,* which notice shall accurately state whether formal action may or may not be taken and which shall be (1) prominently posted in at least one public place reserved for such or similar announcements, (2) mailed, telephoned, telegrammed, or hand delivered to at least two newspapers which newspapers shall be designated by the public body to receive such notices because they have the greatest likelihood of informing the public within the area of jurisdiction of the public body of such meetings, one of which shall be the official newspaper, where any such has been designated by the public body or if the public body has failed to so designate, where any has been designated by the governing body of the political subdivision whose geographic boundaries are coextensive with that of the public body and (3) filed with the clerk of the municipality when the public body's geographic boundaries are coextensive with that of a single municipality, with the clerk of the county when the public body's geographic boundaries are coextensive with that of a single county, and with the Secretary of State if the public body has Statewide jurisdiction.
>
> [*Ibid.* (emphasis added).]

The remedies for violations of the OPMA are set forth in *N.J.S.A.* 10:4–15 as follows:

> a. Any action taken by a public body at a meeting which does not conform with the provisions of this act shall be voidable in a proceeding in lieu of prerogative writ in the Superior Court, which proceeding may be brought by any person within 45 days after the action sought to be voided has been made public; provided, however, that a public body may take corrective or remedial action by acting de novo at a public meeting held in conformity with this act and other applicable law regarding any action which may otherwise be voidable pursuant to this section....
>
> b. *Any party, including any member of the public, may institute a proceeding in lieu of prerogative writ in the Superior Court to challenge any action taken by a public body on the grounds that such action is void for the reasons stated in subsection a. of this section, and if the court shall find that the action was taken at a meeting which does not conform to the provisions of this act, the court shall declare such action void.*
>
> [*Ibid.* (emphasis added).]

### A.

In discussing the plaintiffs' contentions that South Hackensack violated the OPMA, we are satisfied that the clerk's notice for the December 6, 1994, meeting was not a revision to the annual meeting notice provided by Resolution 69. *See N.J.S.A.* 10:4–18. Brown and Montenegro argue that the December 29, 1994, caucus meeting scheduled in Resolution 69 was an error, and the correct date was November 29, 1994.

At oral argument, counsel for South Hackensack conceded that the resolution was in error. There is support for their position, which is reflected in South Hackensack's minutes from their November 3, 1994, meeting where it announced that the caucus meeting scheduled for November 29, 1994, was rescheduled to December 6, 1994. The Township clerk, however, certified that November 29, 1994, "was not designated a meeting date in Resolution # 69." She went on to state, "[i]n fact, notice for a November 29, 1994, meeting was never posted, given or published." Despite these assertions by the clerk, we conclude that South Hackensack rescheduled its regularly-scheduled caucus meeting from November 29, 1994, to December 6, 1994.

### B.

Since the December 6, 1994, meeting was a rescheduled meeting, we note that adequate notice requires "written advance notice of at least 48 hours, giving the time, date, location and, to the extent known, the agenda. . . ." *N.J.S.A.* 10:4–8d. The notice shall also "accurately state whether formal action may or may not be taken. . . ." *Ibid.* Here, the three Republican members of the Township Committee, the majority, knew that the promotions were going to be discussed and approved at the December meeting at least a week before the meeting. Under these circumstances, the OPMA requires that an agenda be provided and further that the notice provide that "formal action may or may not be taken." *Ibid.*

Not only did the Republican majority not inform the public in accordance with the OPMA, they intentionally failed to notify their two Democratic colleagues. This is the type of conduct that the OPMA was enacted to prevent and goes to the very core of the purpose of the OPMA. *See N.J.S.A.* 10:4–7. In *Crifasi v. Governing Body of Oakland,* 156 *N.J.Super.* 182, 187, 383 *A.2d* 736 (App.Div.1978), we said, "if it can be shown that the omission in an agenda for a regular meeting was intentional and was designed to deceive the public, a statutory violation thereby arises." We conclude that this is what occurred here.

*N.J.S.A.* 10:4–7 declares that it is "the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies...." *Ibid.* South Hackensack, and particularly the Township Committee's Republican majority, acted in such a manner that the public was not notified that a vote on the promotions in the police department would occur on December 6, 1994. This was a clear violation of the OPMA.

 "[S]trict adherence to the letter of the law is required in considering whether a violation of the Act has occurred." *Polillo v. Deane,* 74 *N.J.* 562, 578, 379 *A.2d* 211 (1977). Because we conclude that South Hackensack clearly violated OPMA, the action of promoting Brown to chief of police and Montenegro to lieutenant is void. *See N.J.S.A.* 10:4–15b. South Hackensack may take corrective action by acting *de novo* at a public meeting held in conformity with the OPMA and any other applicable law. *See N.J.S.A.* 10:4–15a.

### C.

As previously stated, on November 3, 1994, South Hackensack decided to reschedule its caucus meeting from November 29, 1994, to December 6, 1994, and its public meeting from December 1, 1994, to December 7, 1994. A reporter from the *Weekly News* attended the November 3, 1994, meeting, and she wrote an article in the newspaper on November 23, 1994, stating that the public

meeting had been rescheduled for December 7, 1994. The article did not mention the caucus meeting, rescheduled for December 6, 1994.

When the South Hackensack clerk gave notice of the December 6, 1994, meeting, she only notified one newspaper, the *Bergen Record.* *N.J.S.A.* 10:4–8d requires that notice be given to two newspapers. Brown and Montenegro argue that notice was effectively given to two newspapers because the *Weekly News* reporter attended the November meeting. They rely on *Furlong v. Manning,* 212 *N.J.Super.* 240, 245, 514 *A.*2d 860 (Law Div.1986), which holds that "a face-to-face communication of notice to newspaper representatives is an acceptable mode of transmittal under the Open Public Meeting Act. . . ."

Assuming without deciding that the holding in *Furlong, supra,* is correct, *Furlong* is factually distinguishable from this case. In *Furlong, supra,* the members of the press were "advised of the rescheduled date, time, and purpose of the . . . meeting," and both newspapers published articles about the rescheduled meeting. 212 *N.J.Super.* at 243, 514 *A.*2d 860. Here, the article published in the *Weekly News* did not mention the December 6 rescheduled caucus meeting or the proposed agenda.

We question the viability of the trial court's holding in *Furlong, supra.* Adequate notice, pursuant to *N.J.S.A.* 10:4–8d is "written advance notice," and *Polillo, supra,* 74 *N.J.* at 578, 379 *A.*2d 211, requires strict adherence to the OPMA. Even if we were to conclude that notice to the *Weekly News* reporter was sufficient to satisfy the requirement that notice be given to two newspapers, we still conclude that South Hackensack violated the OPMA because it failed to provide an agenda within forty-eight hours of the meeting.

## IV

On the cross-appeal, Brown and Montenegro contend that the trial court's decision to dismiss their counterclaim and cross-claim for attorney's fees and cost pursuant to *N.J.S.A.* 2A:15–59.1

should be reversed. We find this contention to be clearly without merit. *R.* 2:11–3(e)(1)(E). We find no basis to conclude that South Hackensack's or plaintiffs' claims were frivolous.

Reversed in part; affirmed in part.